UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

ARIE SHEER,                                          :

                Plaintiff,                  :          06 Civ. 4995 (PAC)

    -against-                              :          OPINION AND ORDER

ISRAEL DISCOUNT BANK OF NEW           :
YORK
                Defendant.                  :

------------------------------------------------------X


HONORABLE PAUL A. CROTTY, United States District Judge:


This action for breach of an employment contract and violations of New York State and New York City anti-discrimination laws was filed in State court on May 31, 2006.  Defendant timely removed to this Court on June 28, 2006 on the theory that the employment contract severance provisions fell within the pre-emptive powers of ERISA, 29 U.S.C. § 1132, et seq.  On August 18, 2006, Plaintiff filed a motion to remand the matter to state court.  For the reasons below, the Court grants the motion.

**FACTS**

Plaintiff Arie Sheer ("Sheer") was hired by Defendant Israel Discount of New York ("Bank") in 1996 to serve as its President and CEO, pursuant to an employment contract.  The contract provided a severance package for Sheer of one year's base salary ($480,000) payable in a lump-sum.  Additionally, Sheer received a supplemental benefit under the "Supplemental Executive Retirement Plan" ("SERP") if a "change in control" were to occur.

1

Sheer was terminated in the spring of 2006.  He alleges that he was fired "without cause" and therefore, under the contract, he is owed one year's base salary. Sheer further alleges that the Bank changed control prior to his termination so he is also owed the lump-sum payment under that provision of the SERP.  The Bank denies that Sheer is entitled to any relief.  The Bank removed the State court action on the ground that Sheer's claim is "dependent upon and constitutes a claim for severance benefits pursuant to plans established and maintained by [the Bank] and in accordance with…ERISA."  Sheer contends that there is no federal question jurisdiction because neither the SERP nor the contract constitute a "plan" under ERISA.  In the alternative, the Bank should be equitably estopped from invoking ERISA.[1]

## APPLICABLE LAW

A defendant may remove "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the constitution, treaties or laws of the United States…."  28 U.S.C. § 1441(a).  On a motion to remand, "the defendant bears the burden of demonstrating the propriety of the removal."  Cal. Pub. Employee's Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004) (quoting Grimo v. Blue Cross/Blue Shield of Vt., 34 F.3d 148, 151 (2d Cir. 1994)).

Typically, the basis for federal jurisdiction must be alleged in the complaint itself; however, an exception to this well-pleaded complaint rule is the "complete preemption" exception under which "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in nature."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).  ERISA

---

[1] It is undisputed that there is no diversity jurisdiction.

completely pre-empts any state law cause of action which falls within its civil

enforcement provisions.  See id.

Pursuant to ERISA, federal jurisdiction lies where a recipient of an

"employee welfare benefit plan" seeks to "recover benefits due to him under the terms of

his plan."  29 U.S.C. §§ 1002(1), 1132(a)(1)(B) & (e)(1).  Whether a particular program

is a "plan" under ERISA depends in part upon whether that program "requires an ongoing

administrative program to meet the employer's obligation."  Kaskow v. New Rochelle

Radiology, 274 F.3d 706, 736 (2d Cir. 2001) (quoting Fort Halifax Packing Co. v. Coyne,

482 U.S. 1 (1987)).  Most, but not all, employer undertakings or obligations to pay

severance benefits are "plans" under ERISA.  Schonholz v. Long Island Jewish Med.

Ctr., 87 F.3d 72, 75 (2d Cir. 1996).  The Second Circuit has held that a "plan" may exist

> (1) where an employer's undertaking required managerial
> discretion, that is, where the undertaking could not be fulfilled
> without ongoing, particularized, administrative analysis of each
> case; (2) where a reasonable employee would perceive an
> ongoing commitment by the employer to provide some employee
> benefits; (3) where the employer was required to analyze the
> circumstances of each employee's termination separately in light
> of certain criteria.

Kaskow, 274 F.3d at 737 (quoting Schonholz, 87 F.3d at 76) (internal citations and

quotes omitted).  The court has not decided "which one or more of these factors will be

determinative in every case," nor did it "preclude the possibility that other factors might

be relevant in different factual settings."  Tischmann v. ITT/Sheraton Corp., 145 F.3d.

561, 566 (2d Cir. 1998).  Contract provisions that call for a simple, "one-time, lump-sum

payment triggered by a single event," are not "plans" under ERISA because they require

"no administrative scheme" to meet the employer's obligation.  Fort Halifax, 482 U.S. at

12.

In <u>Schonholz</u>, the court held that an employer had created a "plan" under ERISA because of its promise to pay severance benefits to discharged senior employees in amounts based upon each employee's length of employment and prospects for reemployment. 87 F.3d at 76-77. In <u>Tischmann</u>, the court found a "plan" where the [plan] clearly contemplates application of significant managerial discretion, and case-by-case analysis of each termination, by [the employer].… [The employer] is required under the plan to examine the circumstances of each covered employee's termination and to determine whether it was 'for cause'; if so, the employee is ineligible for benefits." 145 F.3d. at 567. In <u>James v. Fleet/Norstar Fin. Group, Inc.</u>, the court held that an employer's undertaking to give employees 60 days of pay following the last day of work, if employees would remain on the job until internal consolidation was completed, did not create a "plan" within meaning of ERISA. 992 F.2d 463 (2d Cir. 1993). "Simple arithmetical calculations," do not amount to an "ongoing, particularized, administrative, discretionary analysis." <u>Id.</u> at 468.

## DISCUSSION

In applying the three <u>Schonholz</u> factors here, the Court concludes that neither the employment contract nor the SERP constitute "plans" under ERISA.

First, the Bank's undertaking did not require ongoing managerial discretion. There is no discretion as to the amount of the severance benefits. Although the amounts may be different for all three executives because their base salaries may be different, nothing more than simple arithmetic calculations are needed to ascertain those amount. In short, "there does not appear to be anything discretionary about the timing,

form, or amount of payments." Fludgate v. Mngt. Tech., Inc., 885 F. Supp. 645, 649 (S.D.N.Y. 1995).

Second, a reasonable employee of the Bank would not conclude that the Bank was making an "ongoing commitment" to employees to provide benefits.  There are no ongoing responsibilities on the part of the Bank or the employees pursuant to either agreement once the employee receives her severance payment and leaves the company. This case is unlike Tischmann which had a lump-sum payment and a "for cause" determination of the circumstances of the termination, as here; but the Tischmann employee had to "to be available" to render services to the company under "reasonable circumstances."  145 F.3d at 567.  Furthermore, benefits could be terminated if the employee violated one of the other enumerated provisions of the agreement.  Id.  These continuing obligations do not exist here.

Nor does Schonholz dictate a different conclusion.  The court found an ERISA plan there because, inter alia, the agreement required the employee to make reasonable attempts to find other employment, otherwise the payments would cease. Schonholz, 87 F.3d at 76-77.  Again, no such commitment exists here.  Finally, the Bank reserved the right to amend or terminate the severance plans at its discretion, without advance notice (See Maher Decl. Ex. B ¶ VIII.)  In such circumstances, it is less likely that a reasonable employee would perceive an ongoing commitment by the employer. See Tischmann, 145 F.3d at 566 ("This provision [which empowers the employer to terminate or amend the plan] weighs against the conclusion, under the second Schonholz factor, that a reasonable employee would perceive the plan as an "ongoing commitment.").

Third, although there is some amount of managerial discretion here, it is

not the type of discretion ERISA covers.  The contract and the SERP cover employees

who are involuntarily terminated without "cause."  The Bank argues that the

determination of the "for cause" issue requires a finding that this is a "plan" under

ERISA similar to holdings in <u>Tischmann</u> and <u>Schonholz</u>.  The facts of this case, however,

are more akin to <u>Taverna v. Credit Suisse First Boston</u>, 02 cv 5240, 2003 U.S. Dist. Lexis

1607 (S.D.N.Y. Feb. 4, 2003).  In <u>Taverna</u>, the "separation agreement" provided for a

lump-sum payment equivalent to one month's salary for each year worked provided that

the employee performed her job responsibilities in a "satisfactory manner."  <u>Id.</u> at *9.

The Court held that the requirement that employees perform their jobs in a "satisfactory

manner" entails only a "minimal quantum of discretion" and "does not require the

exercise of discretion of the type contemplated by ERISA."  <u>Id.</u>

Here, too, the contract and SERP provide for lump-sum payments.  And

although the agreements require the employer to make a determination of whether the

discharge is "for cause," it is not the type of managerial discretion contemplated by

ERISA.  Specifically, the employment contract defines "cause" to include six triggering

events: (a) conviction of a felony or a crime of "moral turpitude," and other crimes the

Board believes could harm the reputation of the company, (b) regulatory barring of the

Executive to continue holding his position, (c) willful refusal to attempt to perform duties

under the Agreement, (d) gross negligence or willful misconduct with regard to the

business, (e) willful breach of a fiduciary duty owed to the bank, and (f) any other breach

of the employment contract.  (<u>See</u> Maher Decl Ex. A ¶ 7(a)(iii).)  The SERP defines

"cause" to be (a) misappropriation of company funds or property, (b) felony conviction

6

for fraud, embezzlement, larceny or dishonesty, and (c) regulatory barring.  (See Maher

Decl. Ex. B ¶ II(C).)  This type of discretion is not open-ended, but rather requires the

employer to analyze only a fixed set of criteria.

Finally, it should be noted, as the Taverna court noted, that it appears there

were "none of the usual earmarks of an ERISA plan" here.

> [T]here were no "plan documents," but only the letter setting
> forth the Separation Agreement; there was no indication of a
> "plan administrator"; there were no plan "fiduciaries"; there was
> no provision for seeking administrative review; there were no
> employee contributions; there were no procedures for submitting
> "claims"; and there were no monies set aside or held in trust.

Taverna, 2003 U.S. Dist. LEXIS at *10.

The employment contract makes no reference whatsoever to ERISA, nor

to a plan or regulatory scheme of any kind, nor a defined group of plan participants.  See

Fludgate, 885 F. Supp. at 649.  The choice of law provision strictly calls for the

application of New York law, without reference to ERISA or any federal law.  (See

Maher Decl Ex. A ¶ 16.)  The Bank has simply not properly alleged an ongoing

administrative scheme that would be necessary to effectuate this agreement.  First and

foremost, we are dealing with a dispute under an employment contract:  "It was not the

intent of ERISA to protect employment agreements of the type in dispute."  Id.

Although the SERP makes reference to a plan administrator and a claims

process, the Bank has not pointed to any other facts which would support any compliance

with ERISA requirements.  ERISA is mentioned in only two sentences in the entire

SERP.  (See Maher Decl. Ex. B ¶ VII(D).)   The Bank relies only on the rather cramped

language of the SERP which provides that "[t]his Plan is intended to qualify as an

'unfunded plan for management or other highly compensated individuals' under ERISA."

(Cassirer Decl. Ex. A ¶ (5.1).) This assertion, however, does not transform an employment benefit into an ERISA "plan." Furthermore, this provision is found in an old version of the SERP, dated January 1, 2000. The version in effect at the time of Sheer's termination seems to be the July 30, 2004 SERP, which does not include language explicitly indicating that the plan was intended to qualify as an ERISA plan. (See Maher Decl. Ex. B.) After examining both agreements, the Court concludes that Defendant Bank has not met its burden of demonstrating federal jurisdiction and the propriety of removal in this instance.

## CONCLUSION

The employment contract at issue here, together with its various termination benefits, does not fall within the purview of ERISA. Consequently, this Court lacks subject matter jurisdiction.[2] Accordingly, Plaintiff's motion to remand is GRANTED and the case is ORDERED to be remanded to the Supreme Court of New York, pursuant to 28 U.S.C. § 1447(c). The Clerk of Court is directed to close out this case.

Dated: New York, New York
      March 6, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[2] Having remanded the case for lack of subject matter jurisdiction, the Court declines to reach the merits of Plaintiff's equitable estoppel argument.